PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MIGUEL ESPARZA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SELECTQUOTE INSURANCE SERVICES, a California corporation d/b/a SELECTQUOTE.COM,

Defendant.

Case No. 3:26-CV-3136-TWR-MSB

**Assigned to Hon. Todd W. Robinson**

**FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING**

## I. NATURE OF ACTION

1. Defendant SELECTQUOTE and its affiliate marketing partners (collectively, "SELECTQUOTE") bombards Californians with spam purporting to offer "senior discounts." It tricks recipients into mistakenly opening spam emails and clicking on embedded links that take them to Defendant's website at SELECTQUOTE.COM (the "Website") – which markets insurance products and has literally nothing to do with senior discounts.

2. Defendant's tactics are truly evil: ***first***, the e-mail received by Plaintiff proclaims that **"Seniors Born Before 1970 Should Check This List"**. ***Second***, the e-mail instructs recipients to click on a link stating, "We want to help you take advantage of the many discounts and deals available so you can continue to enjoy your retirement and live your life without any extra costs.," which takes recipients to an official-looking website entitled seniordiscounts.live. ***Third,*** that website proclaims that **"If You're A Senior On Social Security And You Don't Take Advantage Of These "Lucrative" Benefits In June, You'll Regret It Big Time!"**, and instructs visitors to click on an advertisement that takes them to Defendant's website at SELECTQUOTE.COM, where Defendant markets insurance products that have nothing to do with senior discounts.

## II. PARTIES, JURISDICTION AND VENUE

3. Plaintiff is and was at all times mentioned herein a citizen of the State of California. After receiving the spam attached hereto as **Exhibit "A"** and being deceived into clicking on the link embedded therein, he visited Defendant's Website as described above.

4. Defendant is a California corporation that markets insurance products. As such, it is a citizen of California for diversity purposes.

5. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity

because the members of the Plaintiff class include citizens of all 50 states and Defendant is a citizen of California. Indeed, based upon the information available to Plaintiff, the plaintiff class exceeds 10,000 members and the amount in controversy is believed to exceed $100 million.

6. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District – specifically, Plaintiff lives in this District, received the spam in this District, and was injured in this District; and Defendant advertises its products to residents in this District.

7. Personal jurisdiction over Defendant is reasonable because Defendant is a citizen of California; maintains an active, ongoing presence in California; advertises its services to California residents; the e-mail at issued was directed to Plaintiff in California; because Defendant tracked Plaintiff in California; and because the claims asserted herein arise directly out of and relate to this California-directed conduct.

## III. FACTUAL ALLEGATIONS

8. Plaintiff is the owner of the California e-mail address recruitforce1@gmail.com, which Plaintiff opened while in California and regularly accesses from California.

9. Defendant spams Plaintiff and other class members relentlessly. Indeed, in the past 3 years, Plaintiff believes that he has received nearly a dozen unwanted spam e-mails from Defendant.

10. As just one example, Plaintiff recently received a spam e-mail from Defendant that had a third-party's domain name with header information untraceable via a WHOIS database, and a misleading subject line. The spam is attached hereto as **Exhibit "A".**

11. After opening the Subject Email, Plaintiff clicked on a hyperlink embedded therein and was directed to a website located at seniordiscounts.live. That website's domain name falsely represented that it was a resource offering discounts specifically for senior citizens, but it was not. In reality, the website offered ***no*** senior discounts

whatsoever. Instead, it merely served as a lead-generation portal advertising a variety of unrelated commercial products and services, none of which bore any meaningful relationship to seniors. Plaintiff then selected a purported offer for discounted insurance for seniors, only to be redirected to the Website at: SelectQuote.com. There, too, the promised "senior discount" proved illusory. Rather than offering any discounted insurance products or benefits uniquely available to seniors, SelectQuote simply marketed its ordinary insurance products without providing any senior-specific savings.

12. Defendant thus employed a classic bait-and-switch scheme: luring consumers with the false promise of exclusive senior discounts, only to funnel them into an ordinary commercial sales process where no such discounts existed. The representations embodied in the Subject Email and the intermediary website were not merely exaggerated marketing — they were materially false and calculated to induce consumers to engage with Defendant's advertising under false pretenses.

13. The preceding is just an example of the spam that Defendant sends to class members. Based on publicly available sources, it is believed that Defendant is responsible for over 100,000 spam e-mails to Californians every year.

14. The spam identified above is an "Unsolicited Commercial e-mail advertisement" because Plaintiff had no pre-existing relationship with Defendant and because the e-mail wase initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

15. Plaintiff has never given "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents.

16. The spam e-mail attached hereto as Exhibit "A" violates Bus. and Prof. Code § 17529.5(a)(2) because its header is likely to mislead a reasonable recipient. Specifically, the e-mail purports to be from the domain "aineural.my.id." That domain has nothing to do with Defendant and reinforces the deceptive nature of the email because it appears to be associated with artificial intelligence or an AI-related technology

company. A reasonable recipient would recognize the term "AI" as the universally accepted abbreviation for artificial intelligence and would naturally read the domain "aineural" as a reference to artificial neural networks — the foundational technology underlying modern AI systems such as ChatGPT, Google Gemini, and similar products. Particularly given the explosion of consumer-facing AI products and services, a reasonable recipient would reasonably conclude that the email originated from, or was affiliated with, a new AI company, AI platform, or AI-powered service – as Plaintiff did. In reality, however, the domain bears no relationship to Defendant, and Plaintiff could find no meaningful information about the registrant of the domain via the WHOIS database.

17. The spam e-mail attached hereto as Exhibit "A" violates Bus. and Prof. Code § 17529.5(a)(2) because it contains a header that is likely to mislead a reasonable recipient. Specifically, the "From" line, "Senior-Discounts 155229982@tadfhvgtb.dswwq.aineural.my.id", falsely suggests that the email originates from a legitimate organization offering discounts or benefits to senior citizens. As stated above, there was no senior discounts available, period – it was simply clickbait to induce recipients to enter into Defendant's marketing funnel.

18. The subject line of the spam, "**Seniors Born Before 1970 Should Check This List,**" violates Business and Professions Code section 17529.5(a)(3) because it is likely to mislead a reasonable recipient, acting under the circumstances, about a material fact regarding the contents or subject matter of the email. A reasonable recipient would understand the subject line to refer to a list of benefits or discounts specifically applicable to senior citizens or individuals born before 1970. Indeed, the body of that same email contains a clickable hyperlink named, "Check Discounts Now". Instead, clicking the email takes the recipient to a commercial website advertising unrelated products that have nothing to do with seniors, age-based benefits, or any list concerning persons born before 1970. The reference to "Seniors Born Before 1970" is therefore nothing more than a deceptive lure designed to exploit the curiosity and vulnerability of consumers in order

to induce them to open the email and visit Defendant's Website. Because the promised "list" does not exist and the email instead serves only as a vehicle to advertise unrelated commercial products, the subject line materially misrepresents the true subject matter of the message and is likely to mislead a reasonable recipient in violation of section 17529.5(a)(3).

19. When Plaintiff clicked on the link to go to Defendant's Website at **SELECTQUOTE.COM**, the landing URL showed that it was the product of a sophisticated performance marketing and affiliate attribution system. It had coded parameters to identify the publisher, affiliate, campaign, click, and conversion so that commissions can be accurately attributed and paid. These parameters did not appear by accident – they demonstrate that Defendant deliberately configured its website to authorize and recognize affiliate traffic, track the source of each visitor, attribute resulting leads or sales to the responsible marketer, and financially reward the parties who generated that traffic. Far from being an innocent bystander, Defendant was an integral participant in the marketing ecosystem that generated and monetized the deceptive spam at issue.

20. This is precisely the type of deception California's anti-spam statute was enacted to prohibit. The statute exists because deceptive subject lines manipulate consumers into expending their limited time and attention on commercial solicitations they never intended to read. Defendant did not merely exaggerate the attractiveness of its product; it fabricated the very subject matter of the email. The bait was purported senior discounts, and the switch was a sales pitch for insurance products unrelated to seniors. A more textbook example of a materially misleading commercial email would be difficult to imagine.

21. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct (in addition to the statutory injury): Plaintiff spent valuable time and attention investigating the misleading offer; incurred opportunity costs and lost

productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage, and battery life.

22. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements. In fact, Defendant actively defies California law.

23. Plaintiff has pleaded the alleged fraud and deception with particularity:

a. the "**<u>who</u>**" is Defendant Selectquote acting directly and through its marketing agents;

b. The "**<u>what</u>**" consists of the deceptive commercial email attached as Exhibit A, including the false subject line;

c. The "**<u>when</u>**" is the date reflected in Exhibit A and Defendant's ongoing spam campaign during the applicable limitations period;

d. The "**<u>where</u>**" is Plaintiff's California email account and, following Plaintiff's click-through, Defendant's website;

e. The "**<u>how</u>**" is straightforward: Defendant transmitted a deceptive commercial email that falsely promised senior discounts, thereby inducing Plaintiff to open the email and click on the embedded link. In reality, there were no senior discounts available or offered, period.

## IV. CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on behalf of all persons similarly situated and seeks certification of the following class:

a. All persons who are citizens of any of the fifty states who during the applicable limitations period, received one or more commercial electronic mail advertisements promoting Defendant's products or services at a "California e-mail address" (as defined by the statute) where Defendant's records, the records of its vendors, or third-party transmission records identify the recipient, sender information, subject line, and date of transmission.

25. The above-described class of persons shall each hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, any partner or employee of Class Counsel, or any person subject to an enforceable arbitration agreement with Defendant. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

26. Numerosity. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff believes that there are at least 100,000 members of the Class.

27. Typicality. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

28. Adequacy of Representation. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

29. Predominance of Common Questions of Law or Fact. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;

b. Whether such e-mails violated California law.

30. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

31. Ascertainability. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

32. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

33. As shown above, the spam violated Section 17529.5.

34. Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

35. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

36. Plaintiff and every class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages;

d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated: July 29, 2026 PACIFIC TRIAL ATTORNEYS, APC

By: /s/ Scott J. Ferrell
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

Dated: July 29, 2026

*/s/ Scott J. Ferrell*
Scott J. Ferrell